In the Matter of the Assignment for the Benefit of Creditors of WRIGHT METAL, INC., Assignor, to SAMUEL J. LASSER, Assignee, Appellant.

G. O. SANDBERG and Others, Creditors, Respondents.

Fourth Department, June 28, 1939.

. *Louis A. Tepper* [*Joseph Lotterman* with him on the brief], for the appellant.

*Emmet H. Ross* [*Ross L. Weeks* with him on the brief], for the respondents.

PER CURIAM. Appellant became assignee for the benefit of creditors of Wright Metal, Inc., in October, 1931, and, under orders of the County Court, operated the business of the assignor for about three years. In the course of operation over $250,000 worth of goods were manufactured and sold. At the time of the assignment the assignee took over, according to the inventory, more than $85,000 worth of assets. At the time of the final accounting it appeared that all this money, the operating income as well as the original inventory, had been used up in operating excepting $1,812.64 on hand for distribution, and there is a total of $18,557.45 still unpaid of expenses incurred in operating the business by the assignee. Of this latter amount $3,863.74 is due to the respondents, on this appeal, for labor performed for the assignee in operating the business.

The order appealed from surcharges the assignee's account with $2,051.10, and directs that that sum added to the $1,812.64 on hand, making $3,863.74 in all, be used to pay the labor claims in full. The order also denies to the assignee commissions, expenses of accounting and expenses of a surety bond. The order allows numerous claims against the assignee to persons who furnished materials to the assignee and performed services for him (an aggregate of about $20,000), without making any provision for their payment. No one has appealed but the assignee.

The final account of the assignee has been accepted by everybody interested as correctly reflecting the conduct of the business. The assignee was the only witness examined on the accounting;

his testimony stands undisputed. Upon cross-examination of the assignee it was sought to show that, at various creditors' meetings in the presence of the court, of which no record was kept, the assignee misrepresented the condition of the business he was operating, and encouraged a belief that the business was being profitably operated when, in fact, it was being operated at a great loss. Some of the findings charge, in effect, that the assignee was guilty of bad faith, and that, for some undisclosed reason, he encouraged a continuance of operation, when, as final results show, a speedy winding up of the business would have been better.

The final result, the using up of all the original assets, seems to show a lack of wisdom in the way the matter was handled. But the assignee was met by many losses for which he cannot be blamed— the bank holiday, the loss of an expensive patent litigation, the bankruptcy of some of his largest debtors, the foreclosure of the mortgage on his plant, and the adverse business conditions that prevailed, all tended to make successful operation difficult if not impossible. The findings to the effect that the assignee was guilty of bad faith are not supported by the record before us. They are based upon proceedings and representations, of which there is no record before us, alleged but not proven to have been had and made at various informal meetings of the creditors and the assignee in the presence of the court. Findings Nos. 10, 11, 12 and 22 should be disapproved and reversed. They are as follows:

" 10. That in obtaining said orders to continue the business, the assignee orally represented to the court that he would pay the laborers employed by him in continuing the business, and the orders were granted upon these representations.

" 11. That in obtaining said orders, the assignee represented to the court, and the orders were granted on the condition, that there were adequate assets with which to pay all debts contracted and to be contracted during the continuance of the business and that such debts would be paid.

" 12. That failure to apply the assets in the hands of the assignee to the payment of the labor claims was in violation of the plan and tacit agreement presented from time to time to the court."

" 22. That the assignee has been negligent in permitting the assets to be depleted by operation of the business by not making provision for the payment of expenses incurred in the conduct f the business."

However, the order appealed from should be affirmed for another reason. Subdivision 2 of section 196 of the Labor Law provides that " every person carrying on a business by lease or otherwise,

shall pay weekly to each employee " his wages. This language is broad enough to cover an assignee for the benefit of creditors. He operated a business in which he took in and paid out hundreds of thousands of dollars. He operated under orders obtained on his own petitions. In one of the orders which he sought and obtained he is authorized " to conduct the said business in the same manner and to the same effect as though the said company were not operated under an assignment; * * * to engage and pay necessary employees," etc. Such direction gave the assignee broad powers, but also called upon him to obey the Labor Law as one not operating under an assignment would have been compelled to do. The requirement of statute, that laborers be paid weekly, had the effect of giving them a preference, of which they have been deprived. At least one employee, whose regular business is that of a clerk in the business in which the assignee is engaged, was paid in full for his work, a matter of $6,500 in the aggregate. The court had power to surcharge the account of the assignee a sufficient amount to effectuate the payment to employees of the wages he should have paid them.

The following additional finding should be made: That the assignee neglected the duty imposed by subdivision 2 of section 196 of the Labor Law to make weekly payment of the wages of employees hired by him, though he took in and paid out amounts of money far in excess of the amounts necessary to pay such wages and to pay all other obligations having an equal or superior right to payment.

In saying that the assignee disobeyed the provisions of the Labor Law in neglecting to pay his laborers their wages weekly, we have in mind that he could not be blamed for neglecting to do the impossible. In other words, the duty to pay wages was a duty imposed by law week by week, and if, in any given week, the assignee had no money with which to pay, then, as to that week, he could be excused. The assignee's account which was filed in support of his petition shows cash income and outgo on a monthly rather than a weekly basis, but, from an examination of that account, it is almost impossible to come to any other conclusion than that, in each week of operation, cash to pay the laborers was available. Payment to them would, of course, have been at the expense of other claimants, but, at least, a failure to pay the other claimants would not have subjected the assignee to a civil penalty (Labor Law, § 198) as in the case of failure to pay wages to laborers weekly.

The testimony of the assignee shows that he never claimed that he lacked money with which he could have paid his laborers

each week. His only claim was that the laborers agreed to waive the weekly payment of wages. This is his testimony: " We had this understanding with these men that they were to work on this basis, that they were to *take their chances* of getting paid." That practice is forbidden by subdivision 3 of section 196 of the Labor Law.

The order should be affirmed, without costs.

All concur, CROSBY, J., not voting. Present — SEARS, P. J., CROSBY, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Order, so far as appealed from, affirmed, without costs of this appeal to any party. Certain findings of fact disapproved and reversed and new findings made.